```
1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF OHIO
2                         WESTERN DIVISION

3    UNITED STATES OF AMERICA,        Docket No. 3:12CR431

4              Plaintiffs,            Toledo, Ohio

5              v.                     August 26, 2014

6    TAURUS DEVAULT,                  Sentencing

7              Defendants.

8    ------------------------------

9                    TRANSCRIPT OF SENTENCING HEARING
                     BEFORE THE HONORABLE JAMES G. CARR
10                   UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:  Daniel Hurley
                          Alissa Sterling
14                        Office of the U.S. Attorney
                          Four SeaGate, Suite 308
15                        Toledo, Ohio 43604
                          (419) 242-5675
16

17   For the Defendant:
                          Adrian P. Cimerman
18                        520 Madison Avenue
                          Toledo, Ohio 43604
19                        (419) 242-8214

20

21   Court Reporter:      Angela D. Nixon, RMR, CRR
                          1716 Spielbusch Avenue
22                        Toledo, Ohio 43624
                          (419) 260-5259
23

24   Proceedings recorded by mechanical stenography, transcript

25   produced by notereading.
```

```
1            COURTROOM DEPUTY:  Case 3:12CR431, United States

2   of America versus Taurus Devault.  Matter called for

3   sentencing.

4            THE COURT:  The record should show that

5   government's represented by assistant United States

6   Attorney Dan Hurley and assistant AUSA Alissa Sterling.

7   Defendant's present in court with his attorney, Mr. Adrian

8   Cimerman.  With you, Mr. Hurley, at the table also?

9            MR. HURLEY:  We have Detective Pete Swartz from

10  the Toledo Police Department.

11           THE COURT:  Counsel, have you each read – have

12  you each received and reviewed the presentence report?  If

13  so, do you have any objections?  If not, are you prepared

14  to proceed with sentencing?

15           MR. HURLEY:  We did receive it, Your Honor.  The

16  only objection we have that's outstanding is at the time

17  the report was prepared, Mr. Devault, through his prior

18  counsel, had not yet submitted a letter that we contend is

19  fabricated, so the report does not recommend an enhancement

20  for obstruction of justice under the guidelines, and when

21  that issue arose, we did note on the record that we were

22  intending to seek those additional two points.

23           THE COURT:  Okay.  Mr. Cimerman, have you

24  received and reviewed the presentence report?

25           MR. CIMERMAN:  I have, Judge.
```

```
 1            THE COURT:  Do you have any objections?
 2            MR. CIMERMAN:  No, Your Honor.
 3            THE COURT:  Are you prepared to proceed with
 4   sentencing?
 5            MR. CIMERMAN:  Yes.
 6            THE COURT:  Okay.  Mr. Devault, did you read the
 7   presentence report?
 8            THE DEFENDANT:  Yes, I just read it.
 9            THE COURT:  Is it your representation you've not
10   seen it before this morning?
11            THE DEFENDANT:  My first time seeing it was
12   yesterday.
13            THE COURT:  I want the defendant placed under
14   oath, please.
15                      TAURUS DEVAULT,
16   was herein, called as if upon examination, was first duly
17   sworn, as hereinafter certified, and said as follows:
18            THE DEFENDANT:  Yes.
19            THE COURT:  Mr. Cimerman, what is your
20   understanding as to when the defendant first reviewed the
21   presentence report?
22            MR. CIMERMAN:  Your Honor, I first met with
23   Mr. Devault on February 12th of this year.  It's my
24   recollection that the report was reviewed with him on that
25   date as well as February 22nd of this year.
```

1          THE COURT:  Have you had occasion to discuss with

2    any prior counsel review the report with him?

3          MR. CIMERMAN:  Certainly based upon Mr. Ivy's

4    sentencing memorandum, it's my belief that he reviewed the

5    report in preparation of that memorandum.

6          THE COURT:  Mr. Devault, does that cause you to

7    change your testimony you just gave a moment ago?

8          THE DEFENDANT:  No.

9          THE COURT:  In other words, Mr. Cimerman is

10   lying?  When did you first see or have the report presented

11   to you?

12         THE DEFENDANT:  Yesterday.  They went over the

13   presentence, like told me about it in my points, but

14   yesterday was my first time ever seeing it.

15         THE COURT:  Okay.  You have reviewed and you're

16   familiar with the points and the assessment and the

17   guideline range; is that correct?

18         THE DEFENDANT:  A little bit, Your Honor.  I'm

19   still confused.

20         THE COURT:  I'm going to proceed with sentencing,

21   thereafter I'm going to hold a further evidentiary hearing

22   to determine the truthfulness of your statements.  If I

23   determine that, in all likelihood, there's reasonable cause

24   to believe that you're not truthful, I'm going to refer the

25   matter to United States Attorney for possible further

1  indictment and prosecution, do you understand me?  You've

2  had three lawyers, correct?

3          THE DEFENDANT:  Yes.

4          THE COURT:  And at least two of those lawyers

5  have represented you during the process after you pled

6  guilty; is that correct?  Mr. Cimerman, do you recall the

7  earlier occasions whether or not you had shown the

8  presentence report or whether he had an opportunity to read

9  it?

10          MR. CIMERMAN:  I believe so, Judge, yes.

11          THE COURT:  Pardon me?

12          MR. CIMERMAN:  I believe, yes.

13          THE COURT:  Okay.  Would that be your custom and

14  practice in such matters as this is to provide a copy to

15  the defendant so that he could read it and review it?

16          MR. CIMERMAN:  Yes.

17          THE COURT:  To the best of your recollection and

18  knowledge, have you ever varied in that custom and practice

19  in the course of representing a defendant in federal court?

20          MR. CIMERMAN:  No, Your Honor.

21          THE COURT:  How long have you practiced law?

22          MR. CIMERMAN:  I believe it's about 35 years now.

23          THE COURT:  And your practice principally,

24  according to my understanding, has been in the area of

25  criminal defense?

```
1              MR. CIMERMAN:  Almost 100 percent.

2              THE COURT:  Okay.  And in this court and other

3    courts in this area?

4              MR. CIMERMAN:  Correct.

5              THE COURT:  Okay.  Record should show, where is

6    reflected, that I have reviewed two reports from Court

7    Diagnostic and Treatment Center and find no reason

8    contained in either of those reports not to proceed further

9    with this sentencing.

10             Let's turn now to the issue of obstruction of

11   justice.  Mr. Hurley, on behalf of the government?

12             MR. HURLEY:  Your Honor, we would call Detective

13   Swartz --

14             THE COURT:  Okay.

15             MR. HURLEY:  -- and put on a brief evidentiary

16   record.

17             THE COURT:  Pardon me?

18             MR. HURLEY:  We would like to make a brief

19   evidentiary record with respect to the obstruction issue,

20   Your Honor.

21             THE COURT:  Okay.

22                       PETER SWARTZ,

23   was herein, called as if upon examination, was first duly

24   sworn, as hereinafter certified, and said as follows:

25             DETECTIVE SWARTZ:  Good morning, Your Honor.
```

1           THE COURT:  Good morning.  You would you tell me

2   your name, please?

3   A.          Defective Peter Swartz.

4           THE COURT:  How do you spell your last name?

5   A.          S-W-A-R-T-Z.

6           THE COURT:  And that's with the Toledo Police

7   Department?

8   A.          Child Exploitation Task Force of the FBI.

9           THE COURT:  How long have you been --

10  A.          It will be 22 years in October.

11          THE COURT:  Any prior law enforcement experience?

12  A.          No, sir.

13          THE COURT:  And when did you obtain the rank of

14  detective?

15  A.          It was roughly '92, I think '92.

16          THE COURT:  Okay.  And your current duties, or

17  the duties at the time of your involvement in this case,

18  were to do what?

19  A.          My full-time duties as part of a task force

20  officer are to investigate domestic minor child sex

21  trafficking cases.

22          THE COURT:  Mr. Hurley.

23          MR. HURLEY:  Your Honor, we had previously

24  provided Government's Exhibits 1, 2 and 3 to Mr. Cimerman

25  last time.  For the record, Government Exhibit 1 is a copy

1    of the letter that was submitted by Mr. Eidy on behalf of

2    Mr. Devault when we first came for sentencing in this case.

3    Mr. Eidy represented to The Court that he had received that

4    letter from Mr. Devault.

5                         DIRECT EXAMINATION

6    BY MR. HURLEY:

7    Q.         Detective Swartz, when that letter first came up,

8    did you take any steps to explore the veracity or

9    truthfulness of that letter?

10   A.         Yes, because of the allegations that the letter

11   wasn't truthful, I met with several different people,

12   including Mrs. Hill.

13   Q.         When you say Mrs. Hill, who's Mrs. Hill?

14   A.         Duane Hill's mother.

15   Q.         Why did you meet with her?

16   A.         Prior to that, we had an opportunity to listen to

17   some phone calls made by Duane Hill from jail to his

18   mother.  His mother, through Mr. Hill's attorney, Paul

19   Geller, heard about a letter.  And Mrs. Hill, Duane's

20   mother, asked Hill, or Duane, whether he had written any

21   letters in support of taking full responsibility for the

22   crimes that he's convicted of.  And during that

23   conversation, he said he didn't write any such letter.  The

24   only letter he did write was to Judge Carr for his

25   sentencing.

1   Q.          So Mr. Hill was talking to his mother on the

2   phone, and they didn't know anyone was listening?

3   A.          That's correct.

4   Q.          And he told his mother he did not write any such

5   letter on behalf of Mr. Devault?

6   A.          Yes.

7   Q.          Did you then interview Mr. Hill himself in the

8   presence of his attorney, Mr. Geller?

9   A.          Yes, we talked with Mr. Hill and showed Mr. Hill

10  the copy of the letter, asked him to read it.  He

11  completely denied writing the letter, nor signing it and

12  had no knowledge of letter itself.

13          MR. HURLEY:  Your Honor, for the record,

14  Government's Exhibit 2 is a letter that Mr. Hill sent to

15  me, care of the U.S. Attorney's Office, in which he is

16  asking for an opportunity to provide information to the

17  government in exchange for a potential sentence reduction.

18  It was received by the U.S. Attorney's Office on

19  January 8th of this year.

20          And then government's Exhibit 3 is Consent to

21  Order of Referral to the Magistrate Judge for purposes of

22  receiving defendant's plea of guilty.  That is R39 in The

23  Court file.  And we offer these Government's Exhibits, 2

24  and 3 as signature exemplars.  Mr. Hill wrote this letter.

25  Mr. Hill signed the consent to have this plea taken by the

1   magistrate judge.  And so these can be compared to the

2   signature of Duane Hill that is on Government's Exhibit 1,

3   the letter that Mr. Devault provided Mr. Eidy?

4           THE COURT:  Okay.  It will be admitted.

5   BY MR. HURLEY:

6   Q.        With respect to the allegation that Mr. Hill

7   allegedly claims in this letter, Devault had nothing to do

8   with this.  Do we have information with respect to the

9   rental of hotel rooms by Mr. Devault relative to the

10  offense that was prosecuted here?

11  A.        During the time frame of the investigation,

12  roughly from January, I believe 2012, through August,

13  Mr. Devault rented roughly 15 hotel rooms that we suspect

14  were used for purposes of prostitution.

15  Q.        And that's with respect to just the one hotel,

16  that's the Motel 6?

17  A.        That is correct.

18  Q.        And the Motel 6, that's the same hotel where your

19  sting operation uncovered the minor victim here; is that

20  right?

21  A.        Yes.

22  Q.        When you say 15 rooms, that was in a period

23  beginning January 1st, motel check its record, and that's

24  through mid to late July; is that right?

25  A.        That's correct.

```
1              THE COURT:  Of what year?

2              MR. HURLEY:  Of 2012, Your Honor, the year that

3    this offense took place.

4    BY MR. HURLEY:

5    Q.        The minor victim here was posted on backpage,

6    basically being offered up for sexual services; is that

7    right?

8    A.        Yes.

9    Q.        And those postings were late July, and then early

10   August of 2012; is that right?

11   A.        That's correct.

12   Q.        Are there additional motel room rentals at the

13   Motel 6 in the name of Taurus Devault during the period

14   this victims was actually posted on backpage for sexual

15   purposes?

16   A.        Yes.  Actually the week prior to the sting that

17   we conducted, I believe it was August 8th, he had rented

18   many rooms at the Motel 6 for almost a week straight.

19   Q.        So there was 15 in the general six or seven month

20   span, and then there was almost nightly room rentals in the

21   name of Taurus Devault during the period the minor victim

22   was posted?

23   A.        Yes, I believe five days in a row.

24   Q.        So there are 21 rentals total by Mr. Devault?

25   A.        I believe that's correct.
```

1   Q.        Mr. Devault's a resident of the Toledo area?

2   A.        Yes, he is.

3   Q.        Were these hotel rooms in Toledo?

4   A.        Yes.

5   Q.        Are there any phone records that would suggest a

6   connection between Mr. Devault and the minor victim in this

7   case?

8   A.        There are phone records where backpage ads,

9   there's numerous items listed on his ads.  There are phone

10  numbers on one certain ad.  There are two different phone

11  numbers where Mr. Devault, his phone had contact with the

12  phone used by the minor and the -- another unknown victim

13  that we have yet to identify.  Dozens of times there's

14  calls back and forth between those two numbers.

15  Q.        So Mr. Devault's phone is calling the phone that

16  was used by the victim in the prostitution dozens and

17  dozens of times?

18  A.        That's correct.

19  Q.        And that's in the period leading up to the sting

20  operation here?

21  A.        Yes.

22  Q.        What is So Thirsty Boys?

23  A.        So Thirsty Boys is actually, according to

24  Mr. Devault, he is lead chief executive officer of So

25  Thirsty Boys.  It's actually an e-mail that they use.  A

1   group of his friends apparently, according to his testimony

2   or his proffer, that for use on social networking and

3   things of that nature.

4   Q.        So it's something Devault is in charge of, this

5   group.

6   A.        According to his statements, yes.

7   Q.        Was the name So Thirsty Boys, does that appear in

8   any postings of the minor victim of this case?

9   A.        Yes.

10  Q.        And in what capacity?

11  A.        The SoThirstyBoys.com was utilized to post the

12  backpage ad.

13  Q.        What do you mean it was used to post?

14  A.        When you post an ad on backpage, there's certain

15  information that you have to have, obviously an e-mail

16  address to send to backpage to post the ad.  There's often

17  pictures, phone numbers, there's typically the saying of

18  what's being offered, who's being offered, the age of the

19  person being offered, and IP addresses where the ads come

20  back to, things of that nature.

21  Q.        But the So Thirsty Boys e-mail address, that's

22  essentially used to identify whoever's making this ad or

23  paying for it?

24  A.        That's correct.

25  Q.        That's their contact with backpage?

 1   A.        Yes.

 2   Q.        And the e-mail address was So Thirsty Boys at

 3   Yahoo.com?

 4   A.        Yes, it was.

 5   Q.        Has Duane Hill ever acknowledged having anything

 6   to do with So Thirsty Boys?

 7   A.        He -- I don't think he was a part of it, never

 8   acknowledged being a part of it.

 9   Q.        So Thirsty Boys is Devault thing?

10   A.        Yes.

11   Q.        May I have a moment, Your Honor?

12             THE COURT:  Of course.

13             MR. HURLEY:  That's all we have at this point,

14   Your Honor.

15             THE COURT:  And can I see the exhibits?

16             MR. HURLEY:  Certainly, Your Honor.

17             THE COURT:  Mr. Cimerman, you may cross examine.

18             MR. CIMERMAN:  Just briefly, sir.

19                        CROSS EXAMINATION

20   BY MR. CIMERMAN:

21   Q.        The Government's Exhibit Number 1, the letter

22   apparently authored by Duane Hill, that carries a notary

23   public stamp on it; correct?

24   A.        Yes, sir.

25   Q.        And according to that letter, the notary appears

1    to be a Carl Shambly?

2    A.          I'm not sure of the last name, but, yes, I

3    understand it is notarized.

4    Q.          Did you make any efforts to determine the

5    identity of this notary or whether, in fact, if that notary

6    did?

7    A.          We did speak with the notary, yes, sir.  And

8    while we went to his home and we talked to him, and he is

9    an employee at the Lucas County Jail.  Off the top of my

10   head, I don't really recall the entire conversation other

11   than he admitted to not -- he couldn't put a face to

12   whoever motorized the -- or brought the letter to him.

13   Q.          But it does appear that it is notary sealed, is

14   affixed to that letter, correct?

15   A.          Yes.

16           MR. CIMERMAN:  Thank you.  Nothing further.

17           THE COURT:  Okay.

18           MR. HURLEY:  Briefly, Your Honor.  May I have a

19   brief moment?

20           THE COURT:  Of course.

21                        REDIRECT EXAMINATION

22   BY MR. HURLEY:

23   Q.          Detective Swartz, do you recall whether Duane

24   Hill was housed at the Lucas County Jail in February of

25   this year -- or I'm sorry, January of this year?

1   A.        I don't believe.  I believe they had to bring him

2   back for us to talk to him about the letter, but I'm not

3   positive on that.

4           MR. HURLEY:  Nothing further, Your Honor.

5           MR. CIMERMAN:  Nothing further, Judge.

6           THE COURT:  Detective, you may step down.  You're

7   free to go or welcome to stay.  It's entirely up to you.

8   Anything further from the government on this issue?

9           MR. HURLEY:  Nothing by way of evidence Your

10  Honor.

11          THE COURT:  Mr. Cimerman, anything by way of

12  evidence?

13          MR. CIMERMAN:  If I may have a moment to consult

14  with my client, Judge.

15          THE COURT:  Of course.

16              (Defendant and Mr. Cimerman conferring off

17               the record.)

18          MR. CIMERMAN:  Nothing further, Judge.

19          THE COURT:  Okay.  Mr. Hurley, on this issue?

20          MR. HURLEY:  Your Honor, with respect to the

21  notary issue, I would just point out for the -- if The

22  Court had not already noticed this, and perhaps you did,

23  the notary is notarizing Mr. Devault's signature, not

24  Mr. Hill's.

25          THE COURT:  I understand.

1          MR. HURLEY:  They're dated on the same date back

2     in September.

3          THE COURT:  I understand.

4          MR. HURLEY:  With respect to the argument, the

5     standard is clear that the Court has to make a finding that

6     Mr. Devault did intentionally obstruct justice.  The

7     standard is at Guideline Section 3(c)1.1.  And the

8     guideline specifically requires that The Court find the

9     defendant wilfully obstructed or attempted to obstruct or

10    impede administration of justice with respect to the, in

11    this case, the prosecution of sentencing of the offense of

12    conviction.  Here, I think there is really no question that

13    the letter is forgery.  It was submitted by Mr. Devault.

14    It was notarized by Mr. Devault.  Not only is the letter

15    false, but what's in the letter is false.

16          Mr. Devault has clearly had more to do with this

17    offense than he has indicated to the probation officer.  He

18    is not completely innocent.  He was not in the wrong place

19    at the wrong time on that one occasion.  Mr. Devault has

20    played a continuing role in this offense, as witnessed by

21    both the telephone contacts with the minor victim, his

22    hotel rentals, and the use of the e-mail that only

23    Mr. Devault is connected to.

24          And so the letter, the allegations in the letter

25    are false, the letter itself is a forgery, and we think the

1    evidence is overwhelming with respect to that, so we ask

2    The Court make a finding that Mr. Devault did wilfully

3    attempt to obstruct in this case.

4            MR. CIMERMAN:  Your Honor, I'm going to simply

5    submit the government has not met a burden in showing that

6    this letter is, in fact, a forgery and that -- it has

7    before obstruction should not apply.

8            THE COURT:  I disagree.  I think evidentiary

9    hearing, if serves in this matter, detective's testified

10   quite persuasively that there's simply no truth to be found

11   in this letter that he submitted.  And the obstruction that

12   he has caused by trying to delude The Court into believing

13   that he is innocent but not culpable for the offenses

14   charged is manifest.  Proceedings have been substantially

15   delayed as a result of this conduct, to some extent the

16   fact that he has had a series of attorneys is, in some

17   regard, has, in some regard, resulted from his conduct.  So

18   I think questionably the obstruction of justice enhancement

19   is appropriate, and Mr. Hurley, that's a two-point

20   enhancement; is that correct?

21           MR. HURLEY:  That's correct, Your Honor.

22           THE COURT:  So as adjusted, the base offense

23   level is a 34, criminal history category is a five.

24           PROBATION:  Excuse me, Your Honor.

25           THE COURT:  I'm sorry?

1               PROBATION:  The guidelines do say that if The

2     Court finds that somebody has obstructed justice, then The

3     Judge should make a ruling whether or not they should

4     rightfully receive three points for acceptance.

5               MR. HURLEY:  The PSR does not currently recommend

6     a three-point.

7               PROBATION:  Okay.  Sorry, I just wanted to make

8     sure that we weren't giving him acceptance and also

9     obstruction.

10              THE COURT:  No.  No.  No, I checked that, and

11    that's not in the report.  So it does not come on there.

12              PROBATION:  Okay.

13              THE COURT:  This is not a defendant who in any

14    way whatsoever ever has accepted responsibility for his

15    conduct.

16              PROBATION:  So he would have a final offense

17    level of 36.

18              THE COURT:  Final guideline range with a base

19    offense level -- again, let me check.  I'm sorry, it's 36,

20    base offense level 36, criminal history category four.

21              MR. HURLEY:  Your Honor --

22              THE COURT:  Pardon me?

23              MR. HURLEY:  I'm sorry to interrupt, I believe

24    Your Honor, but I believe it's criminal history category

25    six.

```
 1              PROBATION:  Correct.

 2              THE COURT:  I'm sorry, it's actually says five on

 3    the presentence report.

 4              MR. HURLEY:  There's a revised --

 5              PROBATION:  Yeah, there was a revised presentence

 6    report.

 7              THE COURT:  Okay.  May I see that version,

 8    Shawna?

 9              PROBATION:  Here's the February one.  The first

10    presentence report mislabeled it as a five, but he actually

11    had more points, and that was all amended to and discussed

12    at one of the previous hearings.  Okay.  So final guideline

13    calculation, base offense level 36, criminal history

14    category of six, guideline range of 324 to 405 months.

15    Mr. Hurley, would you agree that based upon revision of the

16    presentence report and my findings this morning, that that

17    is correct guideline range?

18              MR. HURLEY:  We do, Your Honor.

19              THE COURT:  Mr. Cimerman, I assume that you

20    object to the enhancement?

21              MR. CIMERMAN:  Correct.

22              THE COURT:  Also to the increase in the criminal

23    history category?

24              MR. CIMERMAN:  Correct.

25              THE COURT:  Would you agree that, nonetheless, by
```

1   overruling those objections, the guideline range is as I've

2   indicated it is, solely for purposes of this proceeding

3   without waiving the right to appeal any of the findings

4   that I've made today or otherwise?

5        MR. CIMERMAN:  Your Honor, I would offer the

6   time, when this is appropriate, however, it's conceded

7   within the presentence report itself that Mr. Devault's

8   criminal history has been overstated by way of the fact

9   that the author of the report, Ms. Sizemoore, knows that

10  six points that went into that calculation stem from no

11  operators license charges.

12       THE COURT:  Okay.  I will accept that argument.

13       MR. CIMERMAN:  In fact, there are eight points

14  that are within that report so it would be --

15       THE COURT:  I'm finding that the criminal history

16  category is a five, guideline range of 292 to 365 months.

17  With that downward adjustment to the criminal history

18  category, because I do think that's overstated in that

19  regard, unfortunately it's all too common in this community

20  of people, driving citations and blowing them off figuring

21  they don't have to go to court is a mistake on their part.

22  But the authorities tend to not deal with it appropriately

23  in my view in many respects.  So Mr. Hurley, assuming that

24  I'll note your objection to the reduction, in any event,

25  criminal history category 36 -- base offense level 36,

1  criminal history category five, guideline range of 292 to

2  365 months.

3           MR. HURLEY:  That's correct, Your Honor.

4           THE COURT:  Mr. Cimerman, without waiving any

5  objections of any kind whatsoever, would you agree that, at

6  least for purposes of this morning's proceeding in light of

7  my rulings where we now are, that's a correct guideline

8  range?

9           MR. CIMERMAN:  Judge, if you subtract six points

10  from the total of 14, that would give him a total of eight

11  points and place him in category four.  It's our contention

12  that actually there's eight traffic offenses, eight points

13  attributable to traffic offenses.  If you subtract eight

14  from the 14 that results in six criminal history category

15  points, and that would place him in criminal history

16  category three.

17           THE COURT:  Let me see the revised report.

18           PROBATION:  I'm sorry, if I can speak to that

19  matter.

20           THE COURT:  Sure.

21           PROBATION:  I did identify that there was a

22  reasonable consideration for a downward departure because

23  there was an excessive number of points for a driving

24  without a license.  But it would be -- I would also expect

25  that he should get -- he should at least have four one

1    pointers for driving without a license.  So Mr. Cimmerman's

2    reduction of eight is inaccurate, at the most it should be

3    a reduction of four, which is a category ten, which would

4    be -- ten criminal history points, which is well within

5    criminal history category five, and that is the basis of

6    the recommended downward departure.

7              MR. HURLEY:  For the record that would be our

8    position as well, Your Honor, that we understand that there

9    are issues with traffic tickets locally.  On the other

10   hand, if The Court looks closely, many times Mr. Devault

11   did go to court.  He was represented by counsel, he was

12   given bond and then he failed to appear.  This isn't simply

13   someone didn't know or had trouble with the system.

14   There's a pattern of behavior here over and over again.

15   Mr. Devault is simply not taking care of the tickets, and

16   he's not meeting his obligations with respect to bond or

17   appearing.  So we think there should be some points both

18   because of the nature of the conduct and the fact that he

19   continued to happen over and over again.  So we think some

20   reduction may be warranted, but we would suggest a criminal

21   history category five is certainly adequate and they are

22   appropriate for Mr. Devault.

23             THE COURT:  That will be my finding.  I believe

24   that's a correct computation.  Okay.  That being said I

25   just want on confirm where we are in his calculations.

1  Defense level 36, criminal history category five, range of

2  292 to 365 months.  On behalf of the government?

3        MR. HURLEY:  Your Honor, we just want to note for

4  the record a couple things.  One, The Court's obviously

5  aware Mr. Devault has not accepted responsibility.  He has

6  continued to obstruct, witnessed by The Court's finding

7  this morning.  He has obstructed from the start to finish

8  of this case.  The agents had trouble finding Mr. Devault

9  when he was originally charged.

10        THE COURT:  He was at large, though he knew there

11  was a warrant outstanding for about a year-and-a-half,

12  right?

13        MR. HURLEY:  It wasn't quite that long, Your

14  Honor, but the agent spoke to both Mr. Devault's parents

15  and Mr. Devault himself on more than one occasion.  He

16  promised that he would come in and then he didn't.  They

17  had to go get him.  They had to chase him for a bit.

18  That's not the end of the world, but that set the tone for

19  how Mr. Devault has handled this case from start to finish.

20  Mr. Devault has gone through lawyers, he has obstructed

21  justice.  This is a defendant who is not taking either this

22  offense or this court seriously.

23        Mr. Hill, in contrast, at least accepted, to some

24  extent, what he had done.  We don't suggest that

25  Mr. Devault is any worse than Mr. Hill, but he's certainly

1   no better than Mr. Hill with respect to this offense, and

2   Mr. Devault is a much more serious criminal history.  He

3   has prior drug convictions, he has a number of run ins with

4   the system, and he has not yet learned his lesson to

5   respect The Court's authority.

6           With respect to the seriousness of the offense,

7   as The Court may recall from Mr. Hill's sentencing, this is

8   a minor victim here.  And she was extremely traumatized.

9   This is not simply selling drugs to people who want to buy

10  them.  This was taking advantage of a young girl and

11  selling her for sex so that Mr. Devault and Mr. Hill could

12  get some money on her.  That's an extremely serious

13  offense.  Congress says that a sentence up to life

14  imprisonment is appropriate for that type of sentence.  We

15  defer to The Court's discretion as to how long of a

16  sentence is appropriate, but we do want to remind The Court

17  this is a sentence with a real victim here his who was very

18  seriously traumatized by this.

19          THE COURT:  Mr. Cimerman.

20          MR. CIMERMAN:  Your Honor, if I might have a

21  moment.

22          THE COURT:  Absolutely.

23              (Mr. Cimerman and defendant conferring off

24              the record.)

25          THE COURT:  Go ahead.

```
 1              MR. CIMERMAN:  Yes, Your Honor.  After consulting
 2   with Mr. Devault, it would be his request, and my request
 3   for this court that The Court consider a mandatory minimum
 4   in this case, which is a period of ten years imprisonment.
 5   I would also note that the government, as The Court can
 6   see, that Mr. Devault is basically no more, nor more -- no
 7   less involved than Duane Hill was.
 8              THE COURT:  Mr. Devault, you have the right to
 9   speak on your own behalf before I pronounce sentence.
10              THE DEFENDANT:  I just want to say that I'm sorry
11   and have leniency on me, please.
12              THE COURT:  I couldn't hear the last part.
13              THE DEFENDANT:  I just want to say that I'm sorry
14   and please have leniency on me.
15              THE COURT:  Mr. Devault, you heard the testimony
16   of the detective.  Do you dispute the accuracy of that
17   testimony?  Did you rent those motel rooms, those rooms
18   about 20 times during 2012?  Yes or no?
19              THE DEFENDANT:  Yes.
20              THE COURT:  And did your telephone, whether used
21   by you or someone else, have contact with that -- that the
22   detectives testified was listed as the name of the minor
23   victim in this case?
24              THE DEFENDANT:  It wasn't contact by me, Your
25   Honor.
```

```
 1                THE COURT:  But your phone was used to contact

 2    her?

 3                THE DEFENDANT:  Yes.

 4                THE COURT:  Be honest with me young man because

 5    if you're not, the sentence is going to be within the

 6    guideline range.  I want you at long last to admit that

 7    you've been lying to the United States Government, to your

 8    lawyers, to The Court and to yourself about how wrong

 9    place, wrong time, just drove somebody out, why am I facing

10    all this time.  It's up to you, young man.  A substantial

11    period of your life depends on whether you are at liberty

12    or not, depends on whether or not you tell me the truth

13    because you haven't.  That itself is an independent crime.

14    I want you to acknowledge or not, deny if you're still

15    intending that you made one trip out there because Mr. Hill

16    said he wanted to help them out by giving a ride to a

17    couple girls, that you didn't know anything was going on,

18    it's all a big surprise to you.  Up to you.  You can be

19    truthful or not.  And if I conclude that you've been

20    truthful, then I'm going to consider something other than a

21    guideline sentence.  But if you're not, the guidelines fit

22    and there's no doubt about that.  That's what you've told

23    the probation officer, wrong place, wrong time, one drive,

24    just for driving somebody, I'm looking at this time, how

25    can that be, that's not fair.  I had nothing to do with any
```

1    of this.  Government's got it all wrong.  If the detective

2    tells me that 20 times you've rented hotels room and the

3    location was being used for prostitution and that you were

4    directly involved in the event that took a young woman out

5    there for that purpose.  You've tried to persuade me and

6    everybody else you encountered, oh, no, it didn't happen

7    that way, had nothing to do with anything else.  So you

8    tell me.

9                THE DEFENDANT:  Yes, I knew what I was doing that

10   day, Your Honor.  I had a very minor role in this.

11               THE COURT:  What about all the other times you

12   rented the hotel rooms?

13               THE DEFENDANT:  Your Honor, honestly it was not

14   for that -- it wasn't.  I come and confess to you now, I

15   will.  This is my life, I cannot tell you, you know, I had

16   a very minor role in this, and them other days for the

17   hotel rooms, Your Honor, it was not, Your Honor.  I would

18   tell you.  This is my life, I won't lie.  And the sympathy

19   on that date, the hotel room was not in my room on that

20   date.  It was in his, Your Honor.  It was, it was not in my

21   name that date, though, but I did know what I was doing

22   that day, yes, I did.

23               THE COURT:  And the Thirsty Boys, what about

24   that, that's connected with this activity?

25               THE DEFENDANT:  No, Your Honor.  That has nothing

1    to do with that, Your Honor, by far.  This is a rap

2    entertainment group.  That's all it is, Your Honor.  That's

3    all it is.

4         THE COURT:  In other words, the detective was not

5    telling me the truth when he said there was a connection?

6         THE DEFENDANT:  No, Your Honor that has nothing

7    to do with that, and Duane was not a part of that.  That's

8    a rap group, Your Honor.  It's entertainment.  It has

9    nothing to do with this at all, Your Honor.  Yes, I am part

10   of it.  Yes, I am.  It's a rap group, Your Honor.  Yes, it

11   is.  I'm part of it.  It's a rap group.  It has nothing to

12   do with that at all.  And by being on the e-mail with

13   Yahoo, I do not know, Your Honor.  It's a lot So Thirsty

14   Entertainment out there, but I'm a part of one of them,

15   yes, I am, but I don't know how it got onto that backpage,

16   Your Honor.  I would tell you now honestly.  I would.

17        THE COURT:  Anything further?  Mr. Hill received

18   a sentence of 200 months, correct?

19        MR. HURLEY:  That's my recollection, Your Honor.

20        THE COURT:  Mr. Devault, I am going to impose a

21   sentence of 224 months.  What Mr. Hill got, and I'm taking

22   into consideration as well the fact that you have not been

23   truthful and honest at any stage of this proceeding with

24   regard to your involvement in this case.  I find that it's

25   far more likely than not that you were an active

1    participant in the activities that Mr. Hill was helping to

2    orchestrate, and involved, in at least one instance,

3    corruption of a young minor, young girl, the trafficking in

4    other women for personal profit and gain, and therefore,

5    I'm going to impose the sentence that I have.

6         I do not believe you when you tell me your

7    lawyers did not go over the presentence report with you.

8    You have regularly and consistently sought to interfere

9    with the course of this case.  I have, though it was not

10   necessary for me to do so, granted you numerous requests

11   for different counsel.  None of those requests, in my view,

12   was well taken.  I did so, however, in an effort to have

13   fully your right to adequate representation of this very

14   serious case.  But time after time after time you have

15   tried, throughout the course of this prosecution, to treat

16   it as though somehow you could blow it off, you could

17   concoct some story, you could file a fake affidavit and

18   somehow avoid responsibility for the crimes that you've

19   committed.

20        I've imposed a severe sentence and I've done so

21   for two or three reasons.  One is to make clear to others

22   like you in this community that are engaging in this kind

23   of conduct is a very serious federal crime.  You are no

24   longer in the Municipal Court or the Common Pleas Court.

25   When you come into federal court you can expect to be found

1    guilty and receive a severe penalty.  And I think that this

2    penalty is merited for the purpose, at the very least, of

3    public deterrence on two scores.  First, the underlying

4    conduct in which you engage, and for which you have

5    consistently and repeatedly refused to acknowledge your

6    culpability and responsibility.  And second, for the way in

7    which you have treated the government and United States of

8    of America and this United States Federal District Court.

9         The Court, a federal court, is not something to

10   be toyed with, to be treated as though somehow you can come

11   tell my story you want to make up, you can submit false

12   evidence, thereby inculpating another individual, Mr. Hill,

13   by shifting blame from yourself to him in trying most

14   simply put, to trick the probation officer, me, the

15   prosecutor and your own lawyer into giving you something

16   that you do not deserve, namely a break.

17        Another reason is simple individual deterrence.

18   It is a very long sentence.  It may be longer than

19   necessary to accomplish the goal of individual deterrence.

20   I do not know.  But throughout the course of this

21   proceeding, you've given me very little reason to expect

22   that it's going to take anything much less to see to it you

23   are rehabilitated.  You come to understand your

24   responsibilities to your fellow citizens and the community

25   and the government.

1          And finally, I think that the purpose of

2    incapacitation, at least for a period of time, is entirely

3    appropriate.  What you did and were doing was extremely

4    dangerous and very serious, and it will not be taken

5    lightly by me or any other Judges of this court or any

6    other court.

7          Therefore, to formally pronounce sentence, it's

8    the judgment of this court, the defendant, Taurus Devault,

9    be and hereby is committed to the custody of Bureau of

10   Prisons to serve a term of 224 months.  That will be

11   followed by a maximum term of supervised release, which is

12   how long?

13         PROBATION:  Excuse me, there are two counts here,

14   and maximum 60 months.

15         THE COURT:  Count 2, 60 months, Count 2, 224

16   months, those counts to be served concurrently.  Thank you,

17   Shawna.

18         PROBATION:  And actually, because Count 2, the

19   sex trafficking offense, can have a life term of supervised

20   release.

21         THE COURT:  I will impose a five year term of

22   supervised release.  Given the age which you will be

23   released, I don't think a longer term will be necessary.

24   There will be a registration requirement?

25         PROBATION:  Yes, Your Honor.  That will be a

1   condition.

2           THE COURT:  While on supervised release, you will

3   be required to comply with all standard conditions of

4   release, which Mr. Cimerman will review with you, as will

5   the pretrial service and probation officer upon your

6   release.  I will not impose a fine.  There's no

7   restitution.  There's a special assessment of $200 that

8   will be taken from your prison earnings.

9           PROBATION:  Your Honor, there is restitution.

10  There is a request that we ordered, the small amount for

11  the victim, $240.

12          THE COURT:  How much?

13          PROBATION:  There's $240.

14          THE COURT:  $240 restitution requirement.

15          PROBATION:  Jointly and severally with Mr. Hill.

16          THE COURT:  Jointly and severally with Duane

17  Hill.

18          PROBATION:  Thank you.

19          THE COURT:  While on supervised release, you

20  shall refrain from any unlawful use of controlled

21  substances, submit, as directed by the probation officer,

22  to periodic drug tests to determine whether you violated

23  that condition.  Shall not possess a firearm, destructive

24  device or dangerous weapon.  You can never again lawfully

25  possess a firearm.  If you do with your record you will be

1    prosecuted, convicted and can expect to serve at least five

2    years in prison for violating that condition of release and

3    that statutory prohibition.  If, as directed by the

4    probation officer, you shall participate in an approved

5    program of substance abuse.  You must register for the rest

6    of your life under the Sex Offender Registration

7    Notification Act, also known as the Adam Walsh Act.  That

8    is a life-long requirement.

9         Upon release from confinement you shall obey the

10   instructions of the probation officer and thereafter the

11   law with regard to that requirement under the Minor

12   Protection and Restriction Program.  You will abide by all

13   rules of the Minor Protection and Restriction Program of

14   the United States Pretrial Service and Probation Office as

15   may then be in effect.  You shall, at the direction of your

16   probation officer, submit to mental health evaluation and

17   accept whatever mental health, whatever drug treatment

18   programs are made available to you.

19        While on supervised release, you shall consent to

20   United States pretrial -- pretrial and probation officers

21   conducting a periodic unannounced examination of any

22   computer system which may be in your possession and use or

23   control, that can include copy of any and all memory,

24   hardware, software and/or removal of such systems for the

25   purpose of conducting a more thorough inspection.

 1                You should submit your person, residence, place

 2     of business, computer and/or vehicle to a warrantless

 3     search conducted and controlled by the United States

 4     pretrial service and probation officer in a reasonable time

 5     and reasonable manner based on reasonable suspicion that

 6     you are in possession of contraband or evidence of

 7     violation of condition of release or the law.  Failure to

 8     submit to such search will be grounds for revocation.  You

 9     shall informed any other residents of the premises that

10     your computer may be subject to such a search pursuant to

11     that condition.

12                You should also understand that I neglected to

13     mention that you're absolutely prohibited from engaging in

14     any violation of local, state or federal law.  You shall

15     cooperate in the collection of DNA as directed by the

16     probation officer.  You will receive credit for time

17     served.  I will recommend that you be placed in the

18     institution as near Toledo, Ohio as possible, however,

19     given your criminal history category, the nature of this

20     offense, the likelihood that you will be nearby is quite

21     slight, but I will make that recommendation in any event.

22                You have a right -- there was no plea agreement,

23     was there?

24                MR. HURLEY:  No, Your Honor.

25                THE COURT:  You have the right to appeal.  Talk

1    to Mr. Cimerman.  If you think that grounds for appeal

2    exist, have him file a notice of appeal on your behalf

3    within 14 days; is that correct, within 14 days?  Or you

4    lose forever whatever right you may have to challenge your

5    conviction or your sentence by way of direct appeal, post

6    conviction relief or habeas corpus.  Do you understand

7    that?  Mr. Devault, do you understand your right to appeal?

8             THE DEFENDANT:  (Nonverbal response).

9             THE COURT:  You have to answer yes or no.

10            THE DEFENDANT:  Yes.

11            THE COURT:  Do you understand that you have to

12   file a notice of appeal within 14 days?

13            THE DEFENDANT:  Yes.

14            THE COURT:  And you understand that if you ask

15   Mr. Cimerman to file that notice for you, he will do so?

16            THE DEFENDANT:  Yes.

17            THE COURT:  And is it your desire to appeal?

18            THE DEFENDANT:  Yes.

19            THE COURT:  Okay.  Fine.  But you still have to

20   file a written notice, okay.  If you want Mr. Cimerman to

21   continue to represent you for purposes of appeal, that's

22   fine.  If not, either I or the Court of Appeals can appoint

23   new counsel for you.  Do you understand that?

24            THE DEFENDANT:  Yes.

25            THE COURT:  I believe that I have indicated

1    Section 3553(a) factors that I find applicable in this

2    case.  This is an extremely serious offense.  It's the

3    kinds of offense that unfortunately has afflicted our

4    community now for several years.  Though it's -- law

5    enforcement efforts have received a great deal of

6    publicity, nonetheless that appears insufficient and caused

7    Mr. Devault and others to refrain from engaging in the kind

8    of conduct that brings him here today, namely the

9    corruption of young women and turning them into prostitutes

10   for their own personal profit and gain.

11           I hope that this sentence serves its most

12   fundamental purpose, and that is to make it clear to the

13   public and this community, and perhaps elsewhere, that this

14   kind of conduct will not be tolerated, particularly when

15   its participants refuse to acknowledge their own

16   culpability, and as well when they undertake to deceive The

17   Court and the government by the submission of false

18   evidence.  Had you not done that, your sentence might have

19   been less, but you took that path, for whatever reason you

20   thought would serve your interest because you didn't get

21   it.  You didn't understand that this is not the Toledo

22   Municipal Court where you walk out the door and go about

23   your business as though nothing has happened.  This is not

24   the Common Pleas Court that deals with more serious

25   offenses and offenders.  You come into federal court and

1    you are in a different world.  Our sentences are vastly

2    more severe upon conviction than most of the sentences

3    people receive in Common Pleas.  That is the way the United

4    States government and the congress of the United States and

5    the sentencing commission and the U.S. Attorney's Office

6    and indeed Judges of this court view the appropriate

7    sanctions for conduct of the kind that you engaged in.  And

8    I sincerely hope that this comes to public attention so

9    that perhaps other young men in your situation who may be

10   tempted to do what you did, say oh, no, I don't.  You do

11   not want to go to federal prison, and the chances of

12   getting caught are ever increasing.  Law enforcement

13   continues to employ increasing sophisticated methods to

14   detect conduct of this sort and to apprehend its

15   perpetrators, for the young women in our community in a

16   small way are safer from predators like yourself, Mr. Hill,

17   and your customers.

18          I also think that the sentence is necessary as

19   I've indicated for personal deterrence.  I think it's

20   necessary to serve the interest of the public and the

21   community for the reasons I've expressed.

22          Does any part have any objection to any part of

23   these proceedings not previously made, either proceedings

24   prior to today or today.

25          MR. HURLEY:  No, thank you, Your Honor, on behalf

 1   of the government.

 2           THE COURT:  Mr. Cimerman?

 3           MR. CIMERMAN:  No, Your Honor.

 4           THE COURT:  That will conclude this proceeding.

 5   Thank you.  I should indicate also I'm sorry before we

 6   adjourn, I realize this is a very substantial variance, and

 7   I also acknowledge the fact that the government may

 8   disagree with the sentence, and may itself appeal.

 9   Mr. Cimerman, is there anything further you want me to say

10   with regard to why I varied?  I do think a sentence within

11   the guideline range under all the circumstances would have

12   been more severe than necessary, longer than necessary to

13   accomplish the purposes of sentencing under Section

14   3553(a).  Is there anything further you want me to say in

15   that regard for purposes of appeal?

16           MR. CIMERMAN:  No.

17           THE COURT:  The government also has its right to

18   appeal, and it may well.  Okay.  That will conclude this

19   proceeding.  Thank you.

20

21

22

23

24                C E R T I F I C A T E

25

```
1              I certify that the foregoing is a correct transcript

2    from the record of proceedings in the above-entitled matter.

3

4    s:/Angela D. Nixon

5    ---------------------------              -----------

6    Angela D. Nixon, RMR, CRR                Date

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```